IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DISNEY ENTERPRISES, INC.,

                    Plaintiff,

v.

MACHO BABY I,

                    Defendant.

Case No. 26-cv-08197

**Judge Sharon Johnson Coleman**

**Magistrate Judge Daniel P. McLaughlin**

**AMENDED COMPLAINT**

Plaintiff Disney Enterprises, Inc. ("Plaintiff" or "DEI") hereby brings the present action against Macho Baby I ("Defendant") and alleges as follows:

**I. JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over DEI's claims pursuant to 28 U.S.C. § 1338(a)-(b), as DEI's claims arise under the Lanham Act, as amended (15 U.S.C. § 1051 *et seq.*) and the Copyright Act (17 U.S.C. § 101 *et seq.*).

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendant because Defendant structures its business activities to target consumers in the United States, including Illinois, through at least the fully interactive e-commerce store operating under the alias identified on Schedule A attached hereto (the "Seller Alias"). Specifically, Defendant has targeted sales to Illinois residents by setting up and operating an e-commerce store that targets United States consumers, offers shipping to the United States, including Illinois, accepts payment in U.S. dollars and sells products using infringing and counterfeit versions of DEI's federally registered trademarks and/or unauthorized copies of DEI's federally registered copyrighted works (collectively, the "Unauthorized Products")

1

to residents of Illinois. Defendant is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused DEI substantial injury in the state of Illinois.

## II. INTRODUCTION

3.      DEI filed this case to prevent the Defendant, who trades upon DEI's reputation and goodwill, from further selling and/or offering for sale Unauthorized Products. Defendant created an e-commerce store under the Seller Alias and then advertised, offered for sale, and sold Unauthorized Products to unknowing consumers. Defendant takes advantage of a set of circumstances, including the anonymity and mass reach afforded by the Internet and the cover afforded by international borders, to violate DEI's intellectual property rights with impunity. Defendant attempts to avoid liability by operating under the Seller Alias to conceal its identity, location, and the full scope and interworking of its operation. DEI files this action to combat Defendant's counterfeiting of its registered trademarks and infringement of its registered copyrighted works, as well as to protect consumers from purchasing Unauthorized Products over the Internet. DEI has been, and continues to be, irreparably damaged through consumer confusion and dilution of its valuable trademarks and infringement of its copyrighted works because of Defendant's actions and therefore seeks injunctive and monetary relief.

## III. THE PARTIES

4.      Plaintiff Disney Enterprises, Inc. is a corporation duly organized and existing under the laws of the State of Delaware, having its principal place of business in Burbank, California. DEI owns the trademark rights and copyrighted works asserted herein, which relate to DEI's Lilo & Stitch franchise.

5.      DEI's Lilo & Stitch franchise originated with the 2002 animated feature film *Lilo & Stitch*, written and directed by Chris Sanders and Dean DeBlois and released by Walt Disney Pictures. The film earned a nomination for the Academy Award for Best Animated Feature and

grossed over $250 million at the worldwide box office. DEI expanded the franchise with three sequels (*Stitch! The Movie* in 2003, *Lilo & Stitch 2: Stitch Has a Glitch* in 2005, and *Leroy & Stitch* in 2006), three animated television series (*Lilo & Stitch: The Series*, *Stitch!*, and *Stitch & Ai*), and numerous shorts, specials, and related media. In 2025, a live-action reimagining of the original movie, also titled *Lilo & Stitch*, was released and grossed over $1 billion at the worldwide box office.

6. Over more than two decades, DEI's Lilo & Stitch franchise has achieved enduring global popularity, and the character Stitch has become one of DEI's most recognizable and beloved properties worldwide. DEI has featured Lilo & Stitch-themed attractions at multiple Disney parks around the world, including Stitch Encounter at Tokyo Disneyland, Space Chat with Stitch at Shanghai Disneyland, Stitch Live! at Disney Adventure World at Disneyland Paris, and The Enchanted Tiki Room: Stitch Presents "Aloha E Komo Mai!" at Tokyo Disneyland. The Lilo & Stitch franchise has generated an extensive line of merchandise, multiple video games across various gaming platforms, and continues to drive significant engagement on DEI's direct-to-consumer platforms.

7. DEI, through its authorized licensees and retail channels, markets and sells a wide variety of Lilo & Stitch branded products, including apparel, accessories, toys, plush dolls, homeware, stationery, books, and other merchandise bearing DEI's trademarks and copyrighted works related to its Lilo & Stitch franchise (collectively, "Disney Stitch Products"). Disney Stitch Products are distributed through authorized licensees, DEI-operated retail stores, DEI-operated theme parks and resorts, and DEI's own e-commerce channels, including disneystore.com. Among the purchasing public, Disney Stitch Products are instantly recognizable as authorized DEI

merchandise—a status that reflects DEI's longstanding investment in quality control, marketing, and brand development.

8.      Before Defendant's acts described herein, DEI launched the Lilo & Stitch franchise and related lines of products bearing its famous Lilo & Stitch marks. DEI has also registered a character art toolkit and various style guides, including the distinctive characters embodied therein, with the United States Copyright Office (the "Disney Stitch Copyrighted Works"). True and correct copies of the records from the U.S. Copyright Office website for the Disney Stitch Copyrighted Works are attached hereto as **Exhibit 1**. Some of the characters contained in the Disney Stitch Copyrighted Works are included in the chart below:

| **Stitch** |  |
| --- | --- |



| Angel | |
| Lilo | |

9. Among the exclusive rights granted to DEI under the U.S. Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, and display the Disney Stitch Copyrighted Works to the public. Since first publication, the Disney Stitch Copyrighted Works have been used on Disney Stitch Products and are featured at various DEI-

operated theme parks and attractions, stores owned and/or controlled by DEI, and on DEI's disneystore.com website.

10. In addition to its numerous registrations for its famous DISNEY mark, DEI has also registered many trademarks deriving from the Lilo & Stitch franchise with the United States Patent and Trademark Office, and Disney Stitch Products typically include at least one of DEI's registered trademarks. DEI uses its trademarks in connection with the marketing of Disney Stitch Products, including the following registered marks which are collectively referred to as the "Disney Trademarks."

| Registration Number | Trademark | Registration Date | Goods and Services |
|---|---|---|---|
| 7,204,797 | DISNEY STITCH | Oct. 31, 2023 | For: Headphones in Class 009 |
| 7,204,796 | DISNEY STITCH | Oct. 31, 2023 | For: Cosmetics in Class 003 |

6

| 7,035,462 | DISNEY STITCH | Apr. 25, 2023 | For: Quilts, throws in Class 024. |
| 7,035,461 | DISNEY STITCH | Apr. 25, 2023 | For: Action figures; collectable toy figures; plush toys; toy figurines in Class 028. |
| 7,035,460 | DISNEY STITCH | Apr. 25, 2023 | For: Sleepwear, socks, sweatshirts, t-shirts, tops as clothing, bottoms as clothing; headwear; footwear in Class 025. |
| 7,035,458 | DISNEY STITCH | Apr. 25, 2023 | For: Bookmarks; printed calendars; printed children's activity books; decals; stickers in Class 016. |
| 2,845,107 | LILO & STITCH | May 25, 2004 | For: Pre-recorded compact discs featuring music for children; DVD's featuring animated entertainment for children and adults in Class 009. |

| 2,821,509 | LILO & STITCH | Mar. 09, 2004 | For: Shirts; t-shirts in Class 025 |
|---|---|---|---|
| 2,811,097 | LILO & STITCH | Feb. 03, 2004 | For: action figures and accessories therefore; plush toys; board games; dolls; jigsaw puzzles; toy figurines in Class 028. |
| 2,802,901 | LILO AND STITCH | Jan. 06, 2004 | For: Books featuring stories for children; stickers in Class 016. |
| 3,490,082 | DISNEY | Aug. 19, 2008 | For: Photograph albums; appointment books; autograph books; baby books; paper party bags; binders; bookends; books featuring stories, games and activities for children; gift cards; cartoon prints; pen and pencil cases; children's activity books; modeling clay; coloring books; comic books; paper party hats; paper napkins; stationery; posters; staplers; writing paper; envelopes; postcards; trading cards in Class 016. |

| 7,122,867 | DISNEY | Jul. 25, 2023 | For: Wedding dresses; wedding gowns; dresses; sleepwear; loungewear; tops as clothing; jackets; sweatshirts; sweaters; bottoms as clothing; swimwear; underwear; Veils in Class 025. |
|---|---|---|---|
| 4,208,634 | DISNEY | Sep. 18, 2012 | For: Hair accessories, namely, barrettes; shoe laces in Class 026. |
| 1,162,727 | DISNEY | Jul. 28, 1981 | For: Children's Story Books in Class 016. |
| 3,340,426 | DISNEY | Nov. 20, 2007 | For: cloth bibs for infants; underwear; Halloween costumes; masquerade costumes; dresses; hats; caps; shoes; shorts; tank tops; vests; robes; night gowns; head bands; skirts; coats; slippers; boots; sandals in Class 025. |
| 3,328,006 | DISNEY | Oct. 30, 2007 | For: appliques in the form of decals; arts and craft paint kits; ball-point pens; bookmarks; periodicals and magazines all featuring stories, games and activities for children; calendars; greeting cards; decorative |

| | | | paper centerpieces; paper party decorations; diaries; gift wrapping paper; pens; pencils; stickers; notebooks; memo pads; erasers; pencil sharpeners in Class 016. |
|---|---|---|---|
| 4,042,815 | DISNEY | Oct. 18, 2011 | For: Non-medicated toiletries, cosmetics, dentifrices in Class 003. For: Jewelry, watches, clocks, jewelry boxes not made of precious metals in Class 014. |
| 4,063,531 | DISNEY | Nov. 29, 2011 | For: Articles made from imitations of leather, namely, luggage and luggage tags; bags, namely, backpacks, book bags, duffel bags, and overnight bags; shopping bags of textile; tote bags; purses; handbags; wallets; umbrellas in Class 018. For: Picture frames; mirrors; pillows; furniture in Class 020. For: Housewares, namely, bowls, cake pans, cake molds, cookie cutters, cups, decorative plates, dishes, figurines made of ceramics or porcelain, mugs, plates, sports bottles sold empty, and thermal insulated containers for food or beverage; dinnerware; beverageware; |

| | | | |
|---|---|---|---|
| | | | plastic cups; cookie jars; paper plates in Class 021.<br><br>For: Bath towels; bed sheets; bed skirts; blanket throws; comforters; crib bumpers; curtains; hooded towels; pillow cases; pillow covers; throws; towels; washcloths; bed linen; bath linen; household linen in Class 024. |
| 3,432,510 | DISNEY | May 20, 2008 | For: ACTION FIGURES AND ACCESSORIES; ACTION SKILL GAMES; PLUSH TOYS; BALLOONS; BATH TOYS; CHRISTMAS TREE ORNAMENTS; BOARD GAMES; TOY BUILDING BLOCKS; PLAYING CARDS; DOLLS AND DOLL CLOTHING; DOLL PLAYSETS; CRIB TOYS; MANIPULATIVE GAMES; JIGSAW PUZZLES; KITES; MUSIC BOX TOYS; PARTY FAVORS IN THE NATURE OF SMALL TOYS; INFLATABLE POOL TOYS; DISC-TYPE TOSS TOYS; TOY VEHICLES; MODEL TOY CARS; HAND-HELD UNIT FOR PLAYING ELECTRONIC GAMES; MUSICAL TOYS; MODELED PLASTIC TOY FIGURINES; TOY BANKS; PUPPETS; YO-YOS; TOY SCOOTERS; TALKING |

11

| | | | TOYS; BUBBLE MAKING WANDS AND SOLUTION SETS; MODEL TOY TRUCKS in Class 028. |
|---|---|---|---|
| 3,328,009 | DISNEY | Oct. 30, 2007 | For: Eyeglasses, sunglasses, in Class 009. |
| 3,088,198 | DISNEY | May 02, 2006 | For: Infant wear; jackets; pajamas; pants; sweat pants; sweat shirts; shirts; sleepers; socks; T-shirts and night shirts in Class 025. |
| 3,235,413 | DISNEY | Apr. 24, 2007 | For: Pre-recorded compact discs featuring music, stories and games for children; pre-recorded digital video discs featuring animated children's adventure and comedy movies and music; computer game programs; motion picture films in the field of animated children's comedy and adventure, live-action comedy, drama and TV shows; digital audio players; digital cameras in Class 009. |

12

11.     The U.S. registrations for the Disney Trademarks are valid, subsisting, and in full force and effect, and some are incontestable pursuant to 15 U.S.C. § 1065. The registrations for the Disney Trademarks constitute *prima facie* evidence of their validity and of DEI's exclusive right to use the Disney Trademarks pursuant to 15 U.S.C. § 1057(b) and, in the case of DEI's incontestable registrations, the registrations constitute conclusive evidence of their validity and of DEI's exclusive right to use said marks pursuant to 15 U.S.C. § 1115(b). True and correct copies of the United States Registration Certificates for the Disney Trademarks are attached hereto as **Exhibit 2**.

12.     The Disney Trademarks are exclusive to DEI and are displayed extensively on Disney Stitch Products and in marketing and promotional materials. The Disney Trademarks are also distinctive when applied to Disney Stitch Products, signifying to the purchaser that the products are authorized by DEI and are manufactured according to DEI's quality, safety, and international labor standards.

13.     DEI's use of the Disney Trademarks has built substantial goodwill in the Disney Trademarks. As such, the Disney Trademarks are famous marks, as that term is used in 15 U.S.C. § 1125(c)(1), and have never been abandoned. The success of the Lilo & Stitch franchise, in addition to the marketing of Disney Stitch Products, has enabled the Lilo & Stitch brand to achieve widespread recognition and fame and has made the Disney Trademarks some of the most well-known marks in the entertainment industry. The widespread fame, outstanding reputation, and significant goodwill associated with the Lilo & Stitch brand have made the Disney Trademarks valuable assets of DEI.

14.     Products bearing the Disney Trademarks have been the subject of substantial and continuous marketing and promotion. DEI has marketed and promoted, and continues to market

13

and promote, Disney Stitch Products in the industry and to consumers through traditional print media, authorized retailers, social media sites, point of sale material, and DEI's disneystore.com website.

15. DEI has expended substantial time, money, and other resources advertising, promoting, and marketing Disney Stitch Products. Disney Stitch Products have also been the subject of extensive publicity due to the success of the Lilo & Stitch brand. As a result, products bearing the Disney Trademarks are widely recognized and exclusively associated by consumers as being high-quality products sourced from DEI. The Disney Trademarks have achieved global fame and recognition, adding to the inherent distinctiveness of the marks. As such, the goodwill associated with the Disney Trademarks is of immeasurable value to DEI.

16. Disney Stitch Products are sold only by DEI or through authorized licensees and are recognized by the public as being exclusively associated with the Lilo & Stitch and DISNEY brands.

17. Defendant is an unknown individual or business entity who owns and/or operates the e-commerce store under the Seller Alias identified on Schedule A and/or other seller aliases not yet known to DEI. On information and belief, Defendant resides and/or operates in a foreign jurisdiction and redistributes products from the same or similar sources in those locations. Defendant has the capacity to be sued pursuant to Federal Rules of Civil Procedure 17(b).

18. Tactics used by Defendant to conceal its identity and the full scope of its operation make it virtually impossible for DEI to learn Defendant's true identity and the exact interworking of its infringing network. If Defendant provides additional credible information regarding its identity, DEI will take appropriate steps to amend the Amended Complaint.

14

## IV. DEFENDANT'S UNLAWFUL CONDUCT

19.     The success of the Lilo & Stitch brand has resulted in significant counterfeiting of the Disney Trademarks and infringement of the Disney Stitch Copyrighted Works. To protect its brands, DEI regularly investigates suspicious websites and online marketplace listings. Recently, DEI identified many fully interactive e-commerce stores offering Unauthorized Products on online marketplace platforms like Roadget Business PTE. Ltd. ("SHEIN"), including the e-commerce store operating under the Seller Alias. The Seller Alias targets consumers in this Judicial District and throughout the United States. According to a report prepared for The Buy Safe America Coalition, most infringing products now come through international mail and express courier services (as opposed to containers) due to increased sales from offshore online infringers. *The Counterfeit Silk Road: Impact of Counterfeit Consumer Products Smuggled Into the United States*, prepared by John Dunham & Associates (**Exhibit 3**).

20.     Because infringing products bypass the authorized supply chain, including authorized retailers, licensees, and distributors that legitimate brand owners rely on, they divert sales from lawful businesses and the workers they employ. As a result, the U.S. economy lost an estimated 300,000 or more full-time jobs in the wholesale and retail sectors in 2020 alone. *Id*. When accounting for lost jobs from suppliers that would serve these retail and wholesale establishments, and the lost jobs that would have been induced by employees re-spending their wages in the economy, the total economic impact resulting from the sale of infringing products was estimated to cost the United States economy over 650,000 full-time jobs that would have paid over $33.6 billion in wages and benefits. *Id.* Additionally, it is estimated that the importation of infringing goods cost the United States government nearly $7.2 billion in personal and business tax revenues in the same period. *Id.*

15

21.     Furthermore, online marketplace platforms like those used by Defendant do not adequately subject new sellers to verification and confirmation of their identities, allowing infringers to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 4**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 5**, and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and that "[t]he ability to rapidly proliferate third-party online marketplaces greatly complicates enforcement efforts, especially for intellectual property rights holders." Infringers hedge against the risk of being caught and having their websites taken down from an e-commerce platform by establishing multiple virtual storefronts. **Exhibit 5** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, infringers can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 5** at p. 39. Further, "[e]-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of [infringing products] and [infringers]." **Exhibit 4** at 186-187. Specifically, brand owners are forced to "suffer through a long and convoluted notice and takedown procedure only [for the infringer] to reappear under a new false name and address in short order." *Id.* at p. 161.

22.     Indeed, e-commerce store operators like Defendant commonly engage in fraudulent conduct when registering a seller alias by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

23.     E-commerce store operators like Defendant also regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendant to conceal their identities and the full scope and interworking of their operation, and to avoid being shut down.

24.     Defendant has targeted sales to Illinois residents by setting up and operating an e-commerce store that targets United States consumers using the Seller Alias, offers shipping to the United States, including Illinois, accepts payment in U.S. dollars and sells Unauthorized Products to residents of Illinois.

25.     Defendant facilitates sales by designing the e-commerce store operating under the Seller Alias so that it appears to unknowing consumers to be an authorized online retailer, outlet store, or wholesaler. The e-commerce store operating under the Seller Alias includes content and images that make it very difficult for consumers to distinguish the store from an authorized retailer. DEI has not licensed or authorized Defendant to use the Disney Trademarks and/or to copy or distribute the Disney Stitch Copyrighted Works, and the Defendant is not an authorized retailer of Disney Stitch Products.

26.     E-commerce store operators like Defendant communicate with each other through QQ.com chat rooms[1] and utilize websites, like sellerdefense.cn, that provide tactics for operating multiple online marketplace accounts and evading detection by brand owners. Websites like sellerdefense.cn also tip off e-commerce store operators, like Defendant, of new intellectual property infringement lawsuits filed by brand owners, such as DEI, and recommend that e-

---

[1] QQ is an instant-messaging service launched by Tencent Holdings Ltd. in February 1999. *See* Tencent, *Tencent launched its Instant Messaging service*, https://www.tencent.com/en-us/articles/80262.html (last visited April 28, 2026); *see also* https://im.qq.com/.

commerce operators cease their infringing activity, liquidate their associated financial accounts, and change the payment processors that they currently use to accept payments in their online stores.

27.     Infringers such as Defendant typically operate under multiple seller aliases and payment accounts so that they can continue operation despite DEI's enforcement. E-commerce store operators like Defendant maintain off-shore bank accounts and regularly move funds from their financial accounts to offshore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to DEI.

28.     Defendant, without any authorization or license from DEI has knowingly and willfully used, and continues to use, the Disney Trademarks and copies of the Disney Stitch Copyrighted Works in connection with the advertisement, distribution, offering for sale, and sale of Unauthorized Products into the United States and Illinois over the Internet.

29.     Defendant's unauthorized use of the Disney Trademarks and copying of the Disney Stitch Copyrighted Works in connection with the advertising, distribution, offering for sale, and sale of Unauthorized Products into the United States, including Illinois, is likely to cause, and has caused, confusion, mistake, and deception by and among consumers and is irreparably harming DEI.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

30.     DEI hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

31.     This is a trademark infringement action against Defendant based on its unauthorized use in commerce of counterfeit imitations of the Disney Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The Disney

Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from products offered, sold, or marketed under the Disney Trademarks.

32.    Defendant has sold, offered to sell, marketed, distributed, and/or advertised, and is still selling, offering to sell, marketing, distributing, and/or advertising products using counterfeit reproductions of the Disney Trademarks without DEI's permission.

33.    DEI owns the Disney Trademarks. DEI's United States registrations for the Disney Trademarks are in full force and effect. On information and belief, Defendant has knowledge of DEI's rights in the Disney Trademarks and is willfully infringing and intentionally using infringing and counterfeit versions of the Disney Trademarks. Defendant's willful, intentional, and unauthorized use of the Disney Trademarks is likely to cause, and is causing, confusion, mistake, and deception as to the origin and quality of the Unauthorized Products among the general public.

34.    Defendant's activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

35.    DEI has no adequate remedy at law and if Defendant's actions are not enjoined, DEI will continue to suffer irreparable harm to its reputation and the goodwill of the Disney Trademarks.

36.    The injuries and damages sustained by DEI have been directly and proximately caused by Defendant's wrongful reproduction, use, advertisement, promotion, offering to sell, and/or sale of Unauthorized Products.

## COUNT II
### FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

37.    DEI hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

19

38. Defendant's promotion, marketing, offering for sale, and sale of Unauthorized Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with DEI or the origin, sponsorship, or approval of Defendant's Unauthorized Products by DEI.

39. By using the Disney Trademarks in connection with the offering for sale and sale of Unauthorized Products, Defendant creates a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Unauthorized Products.

40. Defendant's false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Unauthorized Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

41. DEI has no adequate remedy at law and will continue to suffer irreparable harm to its reputation and the associated goodwill of the Lilo & Stitch and DISNEY brands if Defendant's actions are not enjoined.

## COUNT III
## COPYRIGHT INFRINGEMENT OF UNITED STATES COPYRIGHT REGISTRATIONS (17 U.S.C. §§ 106 and 501)

42. DEI hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

43. The Disney Stitch Copyrighted Works constitute original works and copyrightable subject matter pursuant to the Copyright Act, 17 U.S.C. § 101 *et seq*.

44. DEI owns the Disney Stitch Copyrighted Works. DEI has complied with the registration requirements of 17 U.S.C. § 411(a) for the Disney Stitch Copyrighted Works. The Disney Stitch Copyrighted Works are protected by a copyright registration number which was duly issued to DEI by the United States Copyright Office. At all relevant times, DEI has been, and still

is, the owner of all rights, title, and interest in the Disney Stitch Copyrighted Works, which have never been assigned, licensed, or otherwise transferred to Defendant.

45. On information and belief, Defendant had access to the Disney Stitch Copyrighted Works through, without limitation, (1) access to Disney Stitch Products, which are distributed through authorized licensees, DEI-operated retail stores, DEI-operated theme parks and resorts, and DEI's own e-commerce channels, including disneystore.com; and (2) access to Lilo & Stitch multimedia, including the *Lilo & Stitch* movies.

46. Without authorization from DEI, or any right under the law, Defendant has deliberately copied, displayed, distributed, reproduced, and/or made derivative works incorporating the Disney Stitch Copyrighted Works on the e-commerce store operating under the Seller Alias and the corresponding Unauthorized Products. Defendant's derivative works are virtually identical to and/or are substantially similar to the look and feel of the Disney Stitch Copyrighted Works. Such conduct infringes and continues to infringe the Disney Stitch Copyrighted Works in violation of 17 U.S.C. § 501(a) and 17 U.S.C. §§ 106(1)–(3), (5).

47. Defendant reaps the benefits of the unauthorized copying and distribution of the Disney Stitch Copyrighted Works in the form of revenue and other profits that are driven by the sale of Unauthorized Products.

48. Defendant has unlawfully appropriated DEI's protectable expression by taking material of substance and value and creating Unauthorized Products that capture the total concept and feel of the Disney Stitch Copyrighted Works, including the distinctive characters embodied therein.

49. On information and belief, Defendant's infringement has been willful, intentional, purposeful, and in disregard of and with indifference to DEI's rights.

50.     Defendant, by its actions, has damaged DEI in an amount to be determined at trial.

51.     Defendant's conduct is causing and, unless enjoined and restrained by this Court, will continue to cause DEI great and irreparable injury that cannot fully be compensated or measured in money. DEI has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, DEI is entitled to a preliminary and permanent injunction prohibiting further infringement of the Disney Stitch Copyrighted Works.

## PRAYER FOR RELIEF

WHEREFORE, DEI prays for judgment against Defendant as follows:

1)     That Defendant, its affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

  a. using the Disney Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a Disney Stitch Product or is not authorized by DEI to be sold in connection with the Disney Trademarks;

  b. reproducing, distributing copies of, making derivative works of, or publicly displaying the Disney Stitch Copyrighted Works in any manner without the express authorization of DEI;

  c. passing off, inducing, or enabling others to sell or pass off any product as a Disney Stitch Product or any other product produced by DEI, that is not DEI's or not produced under the authorization, control, or supervision of DEI and approved by

DEI for sale under the Disney Trademarks and/or the Disney Stitch Copyrighted Works;

d. committing any acts calculated to cause consumers to believe that Defendant's Unauthorized Products are those sold under the authorization, control, or supervision of DEI, or are sponsored by, approved by, or otherwise connected with DEI;

e. further infringing the Disney Trademarks and/or the Disney Stitch Copyrighted Works and damaging DEI's goodwill; and

f. manufacturing, shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for DEI, nor authorized by DEI to be sold or offered for sale, and which bear any of the Disney Trademarks and/or unauthorized copies of the Disney Stitch Copyrighted Works;

2) Entry of an Order that, upon DEI's request, those with notice of the injunction, including without limitation, any websites and/or online marketplace platforms, including SHEIN, shall disable and cease displaying any advertisements used by or associated with Defendant in connection with the sale of infringing goods using the Disney Trademarks and/or the Disney Stitch Copyrighted Works;

3) That Defendant accounts for and pay to DEI all profits realized by Defendant by reason of Defendant's unlawful acts herein alleged, and that the amount of damages for infringement of the Disney Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

23

4)      In the alternative, that DEI be awarded statutory damages, for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2), of $2,000,000 for each and every use of the Disney Trademarks;

5)      As a direct and proximate result of Defendant's infringement of the Disney Stitch Copyrighted Works, DEI is entitled to damages as well as Defendant's profits, pursuant to 17 U.S.C. § 504(b);

6)      Alternatively, and at DEI's election prior to any final judgment being entered, DEI is entitled to the maximum amount of statutory damages provided by law, $150,000 per work infringed pursuant to 17 U.S.C. § 504(c), or for any other such amount as may be proper pursuant to 17 U.S.C. § 504(c);

7)      DEI is further entitled to recover its attorneys' fees and full costs for bringing this action pursuant to 17 U.S.C. § 505 and 15 U.S.C. § 1117(a); and

8)      Award any and all other relief that this Court deems just and proper.

Dated this 15th day of July 2026.      Respectfully submitted,


<u>/s/ Martin F. Trainor</u>
Martin F. Trainor
Alexander Whang
Victor B. Chahin
TME Law, P.C.
10 S. Riverside Plaza
Suite 875
Chicago, Illinois 60606
708.475.1127
martin@tme-law.com
alexander@tme-law.com
victor@tme-law.com

*Counsel for Plaintiff Disney Enterprises, Inc.*

25